NEVADA ATTORNEY GENERAL FRANKIE SUE DEL PAPA, Petitioner, v. THE HONORABLE THOMAS L. STEFFEN, Chief Justice of the Nevada Supreme Court; THE HONORABLE CHARLES E. SPRINGER, Justice of the Nevada Supreme Court; THE HONORABLE DAVID ZENOFF, Senior Justice of the Nevada Supreme Court, in Their Official Capacities, and HERBERT J. AHLSWEDE, in His Official Capacity as Special Investigator, Respondents.

No. 27847

Petition for An ORDER RESCINDING APPOINTMENT OF SPECIAL MASTER Entered September 1, 1995, and Voiding Associated Expenses.

ADKT 221

July 12, 1996                         920 P.2d 489

Response to Supplemental Opinion filed July 5, 1996, under case number 24598.

*Frankie Sue Del Papa,* Attorney General, Carson City, for Petitioner.

*Chuck R. Gardner,* Las Vegas, for Respondents.

## OPINION

*Per Curiam:*

It can hardly be gainsaid that the *Whitehead* matter has made a lasting, albeit hardly noble, imprint upon Nevada's judicial history with nearly 700 pages of opinions and apparently the court's longest oral argument—approximately five hours. Moreover, the recent Supplemental Opinion filed under case number 24598 seems to lay the foundation for its continuing existence with the invocation by JUSTICES STEFFEN and SPRINGER of the rule of necessity and the inherent powers of the court. They argue these principles permit them (although two in number) to (1) write a "Per Curiam" Opinion overriding a majority order of the duly elected justices in a case where JUSTICES STEFFEN and SPRINGER were parties; and (2) act to bind the *Whitehead* panel, a panel consisting of five positions.[1]

Having reviewed the two-justice "Per Curiam" Opinion, the records, and files in this matter, we conclude:

(1) That a number of new "factual" allegations are included in the two-justice "Per Curiam" Opinion based on facts not in the record and that other allegations are of doubtful probity. However, in view of our disposition here, we perceive no need to address these and thereby add further to the enormous number of pages now on file.

(2) That the *Whitehead* panel gave to petitioner Whitehead the original relief sought in his petition for extraordinary relief and that the undersigned majority have in no way attempted to amend, restrict or change that relief.

(3) That any action of the *Whitehead* panel after granting petitioner the original relief sought in his petition was extra-jurisdictional in nature.

(4) That after granting the relief sought as stated above and after motions by Judge Whitehead, the *Whitehead* panel then sought to launch an unprecedented investigation into the source of certain alleged leaks and to determine the reasons for the loss of confidence in the court and a decline in public support of the court. According to the order, the special master would report only to the *Whitehead* panel.

(5) That the appointment of the special master was an exer-

---

[1]When CHIEF JUSTICE STEFFEN's term expires at the end of 1996, JUSTICE SPRINGER will be the last of the four members of the *Whitehead* panel who once comprised the majority (STEFFEN, SPRINGER, Guy and ZENOFF). Under the rule of necessity, JUSTICE SPRINGER as sole remaining "functional member" could presumably supervise the work of the special master, Herbert J. Ahlswede, and file additional "Per Curiam" Opinions signed only by himself.

cise of extra-constitutional power that was void upon its inception.

(6) That the above broad investigation would make possible a judicial witchhunt with the special master authorized to search for reasons why the Nevada Supreme Court has lost respect and prestige. According to the order creating the position, the special master is cloaked with judicial immunity and his activities are to be supervised only by the panel. Such a situation would place investigatory (i.e., executive) power and adjudicative power into the hands of a panel of this court, thereby presenting a situation which this court has previously disallowed because it would permit the panel to act oppressively. *See* Attorney General v. Steffen, 112 Nev. 369, 380, 915 P.2d 245, 252 (1996). Furthermore, the special master's fees were paid from the personal funds of JUSTICES STEFFEN and SPRINGER, thereby removing from the investigation any possible vestige of impartiality.

(7) That the purpose of the special master is to look for the person or persons allegedly responsible for violating orders of the panel based on the false premise that certain aspects of judicial discipline were confidential and that the Supreme Court could act in secret with regard thereto. It has been established that the Nevada Supreme Court has no authority to impose a veil of secrecy over judicial disciplinary proceedings in the manner employed. *Id.* at 374-75, 915 P.2d at 248-49.

(8) That the *Whitehead* panel had been informed before the special master was selected that there was no money in the Supreme Court budget for such activity. The panel was advised that it should seek money from the legislature in 1995 or go to the Interim Finance Committee for needed funds. Apparently no such requests were submitted or efforts made.

(9) That the actions of the *Whitehead* panel, although perhaps sincerely taken, have unfortunately resulted in a serious loss of prestige and respect for the judicial system and invited strong criticism from observers both in and out of the state. The continued efforts of the two remaining members of the majority of the *Whitehead* panel to recklessly pursue the suspect goals set forth in the order appointing the special master will do further irreparable damage to the prestige of the Nevada Supreme Court, both in and out of the state.

(10) That while there is a rule of necessity recognized by some courts and this court has certain inherent powers, this rule and these powers do not serve in this case to override NRS 2.140, which disallows fewer than three justices to pronounce judgment in a case. Moreover, there is a stronger countervailing "Rule of Necessity" that the court must get on with its regular business and not conduct unconstitutional investigations as pursued by the *Whitehead* panel. The court now has a backlog of nearly 1,800

cases; and although the members are working with diligence, the backlog is growing by almost two cases a day. Simply put, the court and State of Nevada cannot enjoy the luxury or folly of pursuing the phantom leaker, if one exists. In line with public sentiment, we find that the *Whitehead* matter should be forever closed and relegated to the history books, rather than be further added to the already overburdened annals of Nevada's judicial records. We can best discharge our judicial responsibilities and at the same time enhance the respect for the court by single-mindedly devoting our energy and resources to promptly rendering decisions and improving judicial processes.[2]

Accordingly, It Is Hereby Ordered as Follows:

(1)  We incorporate by reference our former order of September 15, 1995, declaring void each and every provision of the "Order Appointing Special Master" which was filed by the *Whitehead* panel on September 1, 1995, and direct the Clerk of this court to strike as void the Supplemental Opinion filed July 5, 1996, under case number 24598 and further not to publish said Supplemental Opinion;

(2)  We direct the Clerk of this court to accept no filings in case number 24598 or case number 27847 unless approved by a majority of the elected members of the court.

(3)  We direct that Special Master Herbert J. Ahlswede is discharged and shall immediately return to the Clerk of the court (1) any subpoenas or subpoenas duces tecum issued by the Clerk of this court on September 1, 1995, and not served, and (2) inform the court immediately of the names, addresses, and dates of service of those upon whom service of subpoena has been made.

Young, V. C. J., and Shearing and Rose, JJ., concur.

---

[2]For over twenty years a priority goal of the Nevada Supreme Court has been to create an intermediate appellate court system to provide relief from the crushing burden of ever increasing appeals. To create an intermediate appellate court, the Nevada Constitution must be amended. The procedure to accomplish this is to have approval of the legislature in two successive sessions after which the proposal is submitted to a vote of the people.

On seven occasions, the Nevada Legislature has approved such a constitutional amendment, the last time in 1993. If the 1995 legislature had given its approval, the proposal to amend the Constitution would have been submitted to the voters in 1996. However, the 1995 legislature was apparently so disenchanted with the actions of the *Whitehead* panel that it refused to process for the requisite second time the joint resolution for the intermediate appellate court. As a result of the failure of the Nevada Assembly to bring the joint resolution out of committee, the court will have to go to the Nevada Legislature again in 1997 and in 1999. If approved by the voters in the year 2000, the court must go to the legislature in 2001 for funding. Thus, it will be the year 2002 at the earliest before such an intermediate court will be functional.